**SUMMONS ISSUED**

**FILED CLERK**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2011 JUN -1 PM 3: 06

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

-----------------------------------------------------------------x
CIRO DEANGELIS,

                 Plaintiff,

- against -

MAJOR CHEVROLET, INC., and FF CREDIT
CORPORATION, INC.

                 Defendants.
-----------------------------------------------------------------x

DKT#:

**COMPLAINT**

**JURY TRIAL DEMANDED**

CV 11-2626

ECF CASE

MATSUMOTO, J.
GO, M.J.

Plaintiff, CIRO DEANGELIS, by his attorneys, TREYVUS & KONOSKI, P.C., complaining of the defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action for actual damages, statutory damages, attorney's fees and the costs of this action against the defendant, MAJOR CHEVROLET, INC., (hereinafter "Defendant") and FF CREDIT CORPORATON, INC., (FF CREDIT or "Co-Defendant") for multiple violations of the Truth in Lending Act 15 U.S.C. § 1601 *et seq.*, (hereinafter "TILA"), and Federal Reserve Board Regulation Z, 12 C.F.R. §226, promulgated pursuant thereto, for violations of the New York "Lemon Law", General Business Law Section 198-b, General Business Law Section 349, and pursuant to the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 (hereinafter the "Act").

**JURISDICTION**

2. This action is brought pursuant to 15 U.S.C. § 1640(c) and 28 U.S.C. §1331 and §1337, and 15 U.S.C. § 2301(d)(1)(B) and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. §1367.

**VENUE**

3. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §

1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. Plaintiff, CIRO DEANGELIS, is a citizen of the United States and at all relevant times a resident of Richmond County, State of New York.

6. Defendant, MAJOR CHEVROLET, INC. was and is a corporation duly organized and existing under and by virtue of the laws of the State of New York with offices located at 43-40 Northern Boulevard, Long Island City, New York 11101.

7. Defendant, FF CREDIT CORPORATION INC. is a financial institution with offices located at 50 Jericho Turnpike, Suite 205, Jericho, NY 11753.

## FACTS

8. On or about November 10, 2009, Plaintiff visited Defendant's place of business in order to purchase a reliable used vehicle. The Plaintiff met with a salesperson and informed the salesperson that he was looking for a reliable used car. Salesperson told Plaintiff that he has a "beautiful car" to show him and Plaintiff was shown a white Mitsubishi Gallant vehicle, Vehicle Identification No. 4A3AA46G7YE062987 (hereinafter the "Vehicle"). Plaintiff took the Vehicle for a brief test drive and the car seemed to be in working order. Plaintiff was also assured by the salesperson that this vehicle was reliable and in excellent working order.

9. On or about November 10, 2009, Plaintiff agreed to purchase the Vehicle and after discussing the price with the salesperson, Plaintiff was told that the purchase price of the vehicle would be $5,995.00. Plaintiff was also given a typed up printout by the salesperson indicating

that the purchase price of the vehicle was $5,995.00.

10. On or about November 10, 2009, Plaintiff left the Defendant a cash deposit in the sum of $1,100 (to hold the vehicle for the Plaintiff) and requested Defendant to finance the balance of the purchase price.

11. Plaintiff was told that it will take time to obtain financing for the vehicle and was told to come back on November 14, 2009 to complete the transaction.

12. On or about November 14, 2009 Plaintiff was told that he must pay an additional $900.00 in cash and that financing was obtained for the balance of the purchase price.

13. On or about November 14, 2009 Plaintiff paid an additional $900.00 in cash and was given a pile of documents to sign without explanation from the salesperson of what the documents were or as to what the terms of the loan were.

14. After signing the documents, Plaintiff was given his copy of the documents and noticed that the cash price of the Vehicle was much higher than previously agreed to. Plaintiff also noticed that the interest rate of the loan was 24.750% even though his credit score rating was 640. Plaintiff asked the salesperson about the increased price and the very high interest rate and was told that "the only way to get this loan was to do it their way." Plaintiff was also told that in order to obtain financing, the loan terms had to be structured this way.

15. Plaintiff became upset and informed the salesperson that he didn't want a loan with such terms but was told that he will not get his money back because he already signed the documents and the documents could not be changed at this point.

16. Plaintiff was extremely upset but believed based on representations of the Defendant and/or Defendant's agents that there was nothing Plaintiff could do to rescind the contract and that Plaintiff's $2,000 would not be returned if he did not keep the Vehicle.

17. Shortly after bringing the Vehicle home, Plaintiff started to experience significant problems with the vehicle. On November 20, 2009, (only six days after the purchase), Plaintiff brought the Vehicle back to the Defendant. At that time Plaintiff told the Defendant that he wants to revoke acceptance of the vehicle because the Vehicle is not safe, not reliable and has numerous defects. Plaintiff was told by the Defendant's agents that the car will not be taken back but that Defendant will fix the Vehicle.

18. When Defendant refused to take the Vehicle back, Plaintiff informed the salesperson that he was not given or shown a copy of the car fax, even though the paperwork signed by the plaintiff stated that he was shown a copy of the car fax. After arguing about the car fax, salesperson provided Plaintiff a copy of the car fax. The car fax indicated that the vehicle was a "salvage vehicle". Plaintiff again became upset and asked the Defendant to take the Vehicle back and again was told by the Defendant's agents that the Vehicle will be fixed.

19. On or about November 20, 2009, Plaintiff brought the Vehicle to the Defendant's service station complaining of defective brakes, service engine soon light coming on, front suspension, inoperable horn and defective belts, air conditioning not working properly and a windshield chip. At the time of the first repair attempt, the vehicle was only driven by the plaintiff for approximately 475 miles and was still within warranty. A work order was prepared and the repairs were made by the Defendant.

20. After the repairs however, Plaintiff was still experiencing problems with the brakes, car pulling to the right and the horn only working occasionally.

21. Plaintiff took the Vehicle back for servicing on December 1, 2009 complaining of the brakes, horn and the car pulling to the right. The Plaintiff again told the Defendant that he wanted to give the car back because the problems were not previously fixed. Defendant refused

to accept the Vehicle back and again, repairs were performed by the Defendant.

22. On or about January 18, 2010, Plaintiff again brought the Vehicle for repairs complaining that the Vehicle's engine was not starting up in the mornings. Repairs were again performed by the Defendant.

23. On or about January 21, 2010, Plaintiff brought the Vehicle back because problems were persisting. Plaintiff again asked the Defendant to take back the Vehicle. Defendant again refused and the vehicle was sent for more repairs.

24. On or about January 21, 2010 Plaintiff's car went for repairs with complaints of battery drain and vehicle engine not starting up. Again repairs were performed.

25. On or about February 7, 2010, the defects persisted. Plaintiff brought the Vehicle for repairs to L.D. Auto repair shop complaining of vehicle vibrating. Router and belt joints were replaced. Repairs were performed and Plaintiff was charged.

26. On or about February 11, 2010, the defects persisted. Plaintiff brought the Vehicle for repairs to L.D. Auto repair shop complaining of battery going dead and vehicle not starting up in the morning. Repairs were performed and Plaintiff was charged.

27. On or about February 11, 2010, the defects persisted. Plaintiff brought the Vehicle for repairs to L.D. Auto repair shop complaining of horn only working intermittently and air bag light on. Repairs were performed and Plaintiff was charged.

28. Defects remained and Plaintiff continued to try to give the car back to the Defendant. On every occasion, Plaintiff's revocation of acceptance was refused by the Defendant and Defendant's agents. The defects were never fixed and continued to persist rendering the Vehicle unsafe and significantly reducing the Vehicle's value.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF TILA UNDER 15 U.S.C. § 1601

29. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "28" with the same force and effect as if fully set forth herein.

30. At all times relevant thereto, the Defendant regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making defendant a creditor within the meaning of TILA, 15 U.S.C. §1602(f) and Regulation Z §226.2(a)(17).

31. 15 U.S.C. §1638 provides that the creditor shall disclose the amount financed, the finance charge, the annual percentage rate and other items so that the consumer can make an informed decision regarding the credit being offered.

32. 15 U.S.C. §1638 also governs the timing of these disclosures and prohibits any conduct by the lender that would prevent the consumer from having a meaningful opportunity to review the terms of the credit being offered.

33. The disclosures contained in the Retail Installment Contract signed by the Plaintiff are inaccurate and false, and therefore violate TILA and Regulation Z.

34. The "Cash Price" listed in the Retail Installment Contract is inaccurate and false. The "Cash Price" is the cost of goods if the buyer was to pay cash.

35. The "Cash Price" reflected on the Retail Installment Contract is $6,990 exclusive of sales tax.

36. The sales price given to the Plaintiff by a sales person in the showroom was $5,995.00.

37. The defendant charged plaintiff a higher cash price due to the fact that financing for

the purchase was through a sub-prime lender.

38. The increased price was separately imposed on the Plaintiff due to his credit risk and was also, therefore, related to the Defendant's extension of credit to the Plaintiff as defined under 15 U.S.C. §1605(a) and 12 C.F.R. §226.4(a).

39. Accordingly, the increased price constitutes a "finance charge" which should have been, but was not, specifically disclosed as such.

40. Instead, the Defendant increased the cash price of the vehicle in effect "burying" this finance charge within the cash price in violation of 15 U.S.C. §1638(a)(3).

41. The defendant also violated TILA by failing to provide the Plaintiff with a meaningful opportunity to review the Retail Installment Contract and the TILA disclosures.

42. The defendant knew that the Plaintiff already paid $2,000.00 deposit.

43. The Defendant then had the Plaintiff sign a "pile" of documents, including RISC, thereby preventing the Plaintiff from having any kind of meaningful opportunity to examine the credit terms.

44. Upon information and belief, the finance manager "shopped" the Plaintiff's loan to numerous banks and decided to finance the vehicle which would create a greater profit to the Defendant.

45. Upon information and belief, this is a common practice of the Defendant and such a practice manifests a gross and willful contempt of the law.

46. As a result of these violations of the TILA, the Defendant is liable to the Plaintiff for actual damages; statutory damages equal to twice the finance charge; punitive damages, costs and attorney fees. The Plaintiff is also entitled to rescission of the contract.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

47. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "47" with the same force and effect as if fully set forth herein.

48. Defendant regularly extends or arranges for the extension, renewal or continuation of credit rendering the Defendant a "creditor" under 15 U.S.C. §1691 (a)(c).

49. Upon information and belief the Defendant submitted a credit application on behalf of the Plaintiff to several lending institutions in order to determine whether such lending institutions would pre-approve the assignment of a loan made by Defendant to Plaintiff for the purchase of the vehicle.

50. As such, Plaintiff was an applicant under 15 U.S.C. §1691 (a)(b).

51. Upon information and belief, at least one lending institution rejected the assignment of a proposed loan based on the Plaintiff's credit application and/or credit report.

52. Defendant failed to provide notice in accordance with 15 U.S.C. §1691 (d), as implemented by 12 C.F.R. §202.9(a)(2), that an adverse action had been taken with respect to the Plaintiff's credit application.

53. Accordingly, Defendant has violated the ECOA and pursuant to 15 U.S.C. §1691 (e) Plaintiff may seek actual and statutory damages, as well as an award for reasonable attorney's fees.

## THIRD CLAIM FOR RELIEF
## BREACH OF EXPRESS WARRANTY PURSUANT TO THE
## MAGNUSON-MOSS WARRANTY ACT

54. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "53" with the same force and effect as if fully set forth herein.

55. The Plaintiff is a "consumer" as defines in 15 U.S.C. §2301(3).

56. Defendant is a "supplier and warrantor" as defined in 15 U.S.C. §2301(4)(5).

57. The Vehicle is a "consumer product" as defined in 15 U.S.C. §2301(6).

58. At the time of purchase, the Vehicle's odometer read approximately $86,606 miles.

59. On or about November 14, 2009, Plaintiff took possession of the Vehicle and shortly thereafter experienced numerous defects which substantially impaired the use, value and/or safety of the Vehicle.

60. Plaintiff asserts that as a result of the ineffective repair attempts made by the Defendant and Defendant's agents, the Vehicle cannot be utilized for personal, family and household use as intended by Plaintiff at the time of acquisition.

61. The specific nonconformities which have not been corrected relate to defective brakes, defective ignition mechanism, defective engine, defective horn, defective electric components and other defects listed on the repair records.

62. Plaintiff has provided Defendant sufficient opportunity to repair and/or replace the defective components in the Vehicle.

63. After a reasonable number of attempts to cure the defects, the Defendant was unable and/or has failed to repair the nonconformities or replace the Vehicle as provided in the written warranties.

64. Plaintiff has justifiably lost confidence in the Vehicle's safety and reliability, and said nonconformities have substantially impaired the value of the Vehicle.

65. Moreover, said nonconformities could not reasonably have been discovered by Plaintiff prior to Plaintiff's acceptance of the Vehicle.

66. Plaintiff contacted the Defendant on numerous occasions about the nonconformities and stated to the Defendant that he was revoking acceptance of the Vehicle.

67. At the time of the revocation, the Vehicle was in substantially the same condition as at the time of delivery except for damage caused by its own nonconformities and ordinary wear and tear.

68. Defendant has refused Plaintiff's revocation of acceptance, and has refused to provide Plaintiff with the remedies to which Plaintiff is entitled upon revocation.

69. The Vehicle remained in a defective and unmerchantable condition, and continued to exhibit the above mentioned defects which substantially impaired its use, value and/or safety.

70. Defendant provided Plaintiff with the 30 day or 1,000 mile (whichever comes first) warranty it was required to provide as per section 198-b of the New York General Business Law.

71. In connection with the purchase, Defendant expressly warranted that, among other things:

> a) The Vehicle was fit for the ordinary purposes of safe, reliable and attractive transportation;
>
> b) The Vehicle was of good, sound and merchantable quality;
>
> c) The Vehicle was free from defective parts and workmanship;
>
> d) The Vehicle was so engineered and designed as to function without requiring unreasonable maintenance and repairs;
>
> e) In the event the Vehicle was not free from defective parts or workmanship as set forth above, the Defendant would repair or replace same without cost to Plaintiff; and
>
> f) Any defects or non-conformities would be cured within a reasonable time.

72. Defendant breached these express warranties in that the Vehicle is plagued with defects and problems.

73. The defects Plaintiff complains of arose during the aforementioned warranty period and Defendant was timely informed of said defects.

74. The defects are "covered parts" as defined in section 198-b of the New York General Business Law.

75. The Defendant and it's agents failed to honor the terms of said warranty by correcting said defects and as a result of Defendant's failure to honor the warranty, Plaintiff cannot utilize the motor vehicle.

76. Plaintiff has been and will continue to be financially damaged due to Defendant's intentional, reckless, wanton and negligent failure to comply with the provision of its warranty.

77. Plaintiff is entitled to a full refund from the Defendant of the purchase price including all finance charges as well as reasonable attorney fees.

## FOURTH CLAIM FOR RELIEF
## BREACH OF GENERAL BUSINESS LAW § 198-b
## (USED CAR "LEMON LAW")

78. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "77" with the same force and effect as if fully set forth herein.

79. The Plaintiff is a "consumer" as defined in N.Y. Gen. Bus. Law §198(c).

80. At all relevant times, the Vehicle is a "motor vehicle" for purposes of N.Y. Gen. Bus. Law §198.

81. The Vehicle has been in repair four or more times for the same problem, and spent more than ___ days in repair for different problems during the first 30 days or 1,000 miles of operation.

82. The brakes, battery, horn and engine start up has been repaired at least four times since Plaintiff purchased the Vehicle and the Vehicle was never fixed or functioning properly.

83. The defects in the Vehicle substantially impaired its safety and value to the Plaintiff.

84. Defendant failed to repair the defects within a reasonable period of time and/or within a reasonable number of attempts.

## FIFTH CLAIM FOR RELIEF
## BREACH OF IMPIED WARRANTY
## PURSUANT TO MAGNUSON-MOSS WARRANTY ACT

85. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86. Plaintiff's Vehicle was subject to an implied warranty of merchanability as defined in 15 U.S.C. §2301(7) running from the Defendant to the intended consumer, Plaintiff herein.

87. Defendant is a supplier of consumer goods as a person/entity engaged in the business of making a consumer product directly available to the Plaintiff.

88. Defendant is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when defendant has entered into a contract in writing to perform services relating to the maintenance or repair of a motor vehicle within thirty (30) days of a sale.

89. Pursuant to 15 U.S.C. §2308, Plaintiff's Vehicle was impliedly warranted to be substantially free of defects and nonconformities in both material and workmanship, and thereby fit for the ordinary purpose for which it was intended.

90. The Vehicle was warranted to pass without objection in the trade under the contract description, and was required to conform to the description of it contained in the contracts and labels.

91. The above described defects and nonconformities present in the Vehicle render it unmerchantable, unsafe, and thereby not fit for the ordinary and essential purpose for which it

was intended and as represented by Defendant.

92. As a result of the breaches of implied warranty by the Defendant, Plaintiff is without the reasonable value of the Vehicle.

93. As a result of the breach of implied warranty by the Defendant, the Plaintiff has suffered and continues to suffer various damages.

94. If Plaintiff prevails, Plaintiff is entitled to his remedies and to an award of reasonable attorney's fees, costs, disbursements and interest under 15 U.S.C. §2308.

### SIXTH CLAIM FOR RELIEF
### REVOCATION OF ACCEPTANCE PURSUANT TO SECTION 2310(d) OF THE MAGNUSON-MOSS WARRANTY ACT

95. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "94" with the same force and effect as if fully set forth herein.

96. The defects and nonconformities present in the Vehicle substantially impaired the value of the Vehicle to Plaintiff.

97. After providing more than a reasonable number of attempts to repair the defects and nonconformities, Plaintiff notified Defendant that he was revoking his acceptance of the Vehicle.

98. Accordingly, Plaintiff may seek the remedy of revocation of acceptance under 15 U.S.C. §2310(d) and based upon such revocation, Plaintiff is entitled to the return of the purchase price in exchange for the return of the vehicle, plus attorney's fees, costs, disbursements and interest.

### SIVENTH CLAIM FOR RELIEF
### DECEPTIVE SALES PRACTICE UNDER GENERAL BUSINESS LAW 349

99. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "98" with the same force and effect as if fully set forth herein.

100. General Business Law Section 349 prohibits the use of deceptive business practices in connection with the sale of an automobile to a consumer.

101. The Defendant's violations of TILA and ECOA constitutes deceptive business practices under General Business Law Section 349.

102. Additionally, failure of the salesperson to show Plaintiff the car fax which Indicates that the vehicle was a "salvage vehicle" is in violation of General Business Law Section 349.

103. The various misrepresentations and improper disclosures set forth above were materially misleading and Plaintiff has suffered actual injury as a result.

104. By virtue of Defendant's misleading and deceptive business practices, Plaintiff purchased a salvaged vehicle and paid the Defendant almost three times the actual value and worth of the Vehicle.

105. Accordingly, Plaintiff has been and continues to be damaged as a result of Defendant's deceptive and misleading business practices.

106. Accordingly, Plaintiff is entitled to damages, attorney's fees, costs, disbursements And punitive damages in an amount determined at trial.

## **LIABILITY OF FF CREDIT CORPORATION, INC.**

107. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "106" with the same force and effect as if fully set forth herein.

108. Federal Law 16 C.F.R. Part 433 requires that all consumer installment contracts contain the following provisions:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO

ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

109. FF CREDIT CORPORATION, INC., is the holder of the Retail installment Contract ("Contract") for the purchase of Plaintiff's Vehicle. FF CREDIT CORPORATON, INC., is bound by the terms quoted in paragraph 96 above (said terms are also in the Contract signed by the Plaintiff), thus subjecting FF CREDIT CORPORATION, INC., to all claims and defenses which Plaintiff has asserted against the Defendant.

110. Plaintiff used funds provided under the Contract in order to obtain the Vehicle.

111. FF CREDIT CORPORATION, NC., has entered into a master loan agreement with Defendant, whereby Defendant submits various documents, including a credit application to FF CREDIT CORPORATION, INC., for approval of various consumer loans. The documents submitted to FF CREDIT CORPORATION, INC., upon which approval of such loans are contingent are referred to as a "loan package".

112. Once FF CREDIT CORPORATION, INC., approves the terms of a loan, it has agreed, pursuant to the master loan agreement, to take assignment of a retail installment contract, subject to other documents being properly executed and delivered to FF CREDIT CORPORATION, INC.

113. In the instant matter, FF CREDIT CORPORATION, INC., reviewed the loan package for the Plaintiff's loan and made its determination to accept the assignment of the Contract based on the documents contained in the loan package.

114. Pursuant to 15 U.S.C. §1641(a), FF CEDIT CORPORATION, INC., is liable

under TILA as an assignee because TILA violations were evident on the face of the documents assigned to Co-defendant.

115. As a result of these violations of TILA, Co-defendant is liable to the Plaintiff for actual damages, statutory damages equal to twice the finance charge, punitive damages, costs, disbursements and attorney's fees.

116. Similarly, Co-defendant is liable to the Plaintiff under counts 3, 4, 5, and 6, since Co-defendant is subject to all claims and defenses that the Plaintiff has against the Defendant under 16 C.F.R. Part 433 and the specific language contained in the Contract.

**WHEREFORE,** Plaintiff CIRO DEANGELIS demand judgment against MAJOR CHEVROLET, INC., and FF CREDIT CORPORATION, INC., AS FOLLOWS:

a. Count 1: For rescission of the contract, actual damages and statutory damages, as well as an award of reasonable attorney's fees, costs and expenses.

b. Count 2: For actual damages and statutory damages, as well as an award of reasonable attorney's fees, costs and expenses

c. Count 3: For damages in the amount to be determined at trial, including incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses.

d. Count 4: For a refund of the purchase price, incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses.

e. Count 5: For damages in the amount to be determined at trial, including incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses.

f. Count 6: For a refund of the purchase price, incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses.

g. Count 7: For damages in the amount to be determined at trial, including incidental and consequential damages, as well as an award of reasonable attorney's fees, costs and expenses.

h. Count 8: As set forth above.

Dated: April 8, 2011
      New York, NY

By:    *[signature]*
KIRA TREYVUS (KT8049)
Treyvus & Konoski, P.C.
*Attorney(s) for the Plaintiff*
305 Broadway, 14th Floor
New York, NY 10007
(212) 897-5832